IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**RICHARD LARSON, 35930**,

    Plaintiff,

    vs.                 No.   **CIV 01-0034 MCA/LCS**

**NEW MEXICO DEPARTMENT OF CORRECTIONS,
CORRECTIONAL MEDICAL SERVICES, INC.
DR. RAMON SAAVEDRA, DR. LAWRENCE LEYBA,**
and **JANE** and/or **JOHN DOES 1** and **2**, in their individual
official capacities,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant *Dr. Saavedra's Motion for Summary Judgment* (Doc. No. 66) filed on February 1, 2002; Defendant *Dr. Leyba's Motion for Summary Judgment* (Doc. No. 67) filed on February 1, 2002; and *Defendants New Mexico Department of Corrections and Correctional Medical Services' Motion for Summary Judgment* (Doc. No. 70) filed on February 4, 2002. The Court, having reviewed the submissions of the parties, the relevant law, and otherwise being fully advised in the premises, determines that Defendants' motions are granted in part with respect to Plaintiff's Section 1983, Eighth Amendment, and Fourteenth Amendment claims, and denied in part on Plaintiff's state law claims, as explained below.

**I.     BACKGROUND**

Richard Larson, a prisoner in the New Mexico corrections system, brings the present lawsuit against the New Mexico Department of Corrections ("NMDOC"), Correctional Medical Services, Inc. ("CMS"), Dr. Ramon Saavedra, Dr. Lawrence Leyba, Dr. Balraj Dhillon, and Dr. Michael Puisis, in their individual and official capacities. Plaintiff developed an abdominal hernia around January 1994 while he was in the correctional facility. He alleges that CMS failed to send him to a medical specialist or otherwise adequately treat the hernia. Plaintiff also alleges that CMS physicians and administrators fraudulently misrepresented to him that surgery would be too dangerous. (Am. Compl. ¶ 17). Plaintiff claims that his hernia grew and, at present, is the size of a football. (Compl. 22). He seeks relief under 42 U.S.C. § 1983 (1994), the Eighth Amendment, and the Fourteenth Amendment of the United States Constitution. He also seeks relief under state law theories of intentional and negligent concealment under the New Mexico Tort Claims Act (against Government and individual Defendants) and theories of medical negligence and respondeat superior against CMS. Plaintiff initially sued in the First Judicial District Court for the County of Santa Fe, State of New Mexico. Defendants removed the case to the federal court on the basis of federal question jurisdiction. Since Dr. Puisis and Dr. Dhillon were dismissed as a result of a stipulated motion, CMS, NMDOC, Dr. Saavedra, and Dr. Leyba are the only remaining Defendants in the present lawsuit.

The following facts are taken from the briefs and exhibits of record and are either uncontroverted or viewed in the light most favorable to Plaintiff's case. Immaterial facts and facts not properly supported by the record are omitted.

At the time of the incident in question, Plaintiff was incarcerated at the Southern New Mexico Correctional Facility, then transferred for a brief time to the Central New Mexico Correctional Facility. Plaintiff suffered from chronic obstructive pulmonary disease ("COPD") and was dependent upon steroids. He was also dependent upon the inhaler and nebulizer treatment of his respiratory problems. He was a smoker throughout his life, with episodes of quitting and resuming smoking. In January 1994, Plaintiff was observed to have developed a small abdominal hernia—about three or four centimeters in diameter. His hernia grew over the next several years. In 1998, the hernia was measured to be twenty centimeters in diameter. Plaintiff did not undergo surgery for his hernia. On February 7, 1994, Dr. Saavedra prescribed an abdominal binder to reduce the hernia. (Ex. B-2 &3). On October 5, 1994, Wilbur Dixon, P.A. explained to Plaintiff some knee and chest exercises to decrease the hernia discomfort and pain. (See Ex. B-13). Dr. Leyba gave Plaintiff an abdominal support to be worn around the hernia to reduce the discomfort. Dr. Dhillon also gave him an abdominal binder for support. (Ex. B-64). On May 7, 1998, Plaintiff submitted a grievance to the authorities regarding his hernia repair. (Ex. B-66).

According to the medical records, Plaintiff was attended to by CMS medical personnel as follows:

| MEDICAL PERSONNEL | DATES OF ATTENDANCE | EXHIBITS |
|---|---|---|
| **Ramon Saaverda, M.D.** | **1994:** | |
| | January 24th | B-1 |
| | February 7th | B-2 |
| | March 18th | B-4 |
| | April 15th | B-6 |
| | May 6th | B-8 |
| | July 1st | B-9 |
| | July 19th | B-10 |
| | August 16th | B-11 |
| | September 28th | B-12 |
| | November 29th | B-15 |
| | December 2nd | B-16 |
| | December 21st | B-18 |
| | **1995:** | |
| | January 20th | B-19 |
| | February 20th | B-20 |
| | March 9th | B-21 |
| | April 21st | B-24 |
| | May 9th | B-25 |
| | May 10th | B-26 |
| | May 16th | B-27 |
| | May 23rd | B-28 |
| | **1996:** | |
| | March 15th | B-29/B-42 |
| | April 15th | B-43 |

| MEDICAL PERSONNEL | DATES OF ATTENDANCE | EXHIBITS |
|---|---|---|
| Lawrence Leyba, M.D. | **1995:** | |
| | June 14th | B-30 |
| | June 30th | B-31 |
| | July 26th | B-33 |
| | August 21st | B-34 |
| | September 21st | B-36 |
| | October 19th | B-37 |
| | November 15th | B-38 |
| | **1996:** | |
| | January 12th | B-40 |
| | February 15th | B-41 |
| | May 29th | B-44 |
| | June 13th | B-46 |
| | August 29th | B-49 |
| | November 21st | B-53 |
| | **1997:** | |
| | January 15th | B-55 |
| | January 21st | B-57 |
| | March 3rd | B-58 |
| | March 18th | B-59 |
| | May 1st | B-60 |
| | May 8th | B-61 |
| | June 2nd | B-62 |
| Balraj Dhillon, M.D. | **1998:** | |
| | July 2nd | B-63 |
| | July 17th | B-68 |
| | July 28th | B-69 |
| | August 18th | B-70 |
| | September 23rd | B-71 |
| | September 28th | B-72 |
| Jack Herrmann, M.D. | **1997:** | |
| | January 19th | B-56 |
| | June 25th | Herrmann dep. at 37 |
| | October 18th | Herrmann dep. at 45 |
| | December 26th | Herrmann dep. at 47 |

| MEDICAL PERSONNEL | DATES OF ATTENDANCE | EXHIBITS |
|---|---|---|
| **Shahid Hussain, M.D.** | **1998:** | |
| | October 17th | B-74 |
| | October 18th | B-74 |
| | October 19th | B-74 |
| | December 2nd | B-76 |
| | December 3rd | B-76 |
| | December 4th | B-76 |
| | December 5th | B-76 |
| | December 6th | B-76 |
| | December 23rd | B-78 |
| | December 24th | B-78 |
| | December 25th | B-78 |
| | **1999:** | |
| | March 7th | B-84 |
| **Robert Woods, M.D.** | **1998:** | |
| | December 15th | B-77 |
| **Gerald Brown, M.D.** | **1999:** | |
| | January 28th | B-79 |
| **Wilbur Dixon, P.A.** | **1994:** | |
| | April 13th | B-5 |
| | May 2nd | B-7 |
| | October 5th | B-13 |
| | December 14th | B-17 |
| **Carol Weber, R.N.** | **1994:** | |
| | November 14th | B-14 |
| **Randy Boyer, P.A.** | **1995:** | |
| | September 5th | B-35 |
| **Randee Greenwald, L.P.N.** | **1996:** | |
| | August 22nd | B-48 |
| | September 10th | B-50 |
| | October 11th | B-51 |
| | November 13th | B-52 |

Pulmonary function tests were conducted on September 26, 1994, March 10, 1998, and December 8, 1998.

In a surgical consultation opinion to Dr. Puisis, Dr. Woods indicated that he was reluctant to proceed with the surgery. (Ex. B. 82). Dr. Brown noted that "in general he is

not very enthusiastic about the procedure on the gentleman" because of the significant pre- and post-operative respiratory difficulties. (Ex. 80). Dr. Brown also noted that Plaintiff poses a moderate to significant risk for short-term post-operative respiratory failure. Id.

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The requirement of a genuine issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is material if it is essential to the proper disposition of the claim. See id. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. See id. at 251. The adverse party must set forth specific facts showing that there is genuine issue for trial. See id. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. See

id. at 325. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. See Anderson, 477 U.S. at 256. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. See id. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. See id. Any evidence tending to show triable issues will be viewed in the light most favorable to the nonmoving party. See Black Hills Aviation, Inc. v. United States, 34 F.3d 968, 972 (10th Cir. 1994).

### B. Plaintiff's Federal Claims

Plaintiff brought Section 1983, Eighth Amendment, and Fourteenth Amendment claims. The underlying basis of Plaintiff's Section 1983 claim is that he was given inadequate medical care while he was in prison. Under the Fourteenth Amendment's Due Process Clause, pretrial detainees are entitled to the same degree of protection regarding medical attention as that of convicted inmates under the Eighth Amendment. See Barrie v. Grand County, Utah, 119 F.3d 862, 867 (10th Cir. 1997). Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, see Bell v. Wolfish, 441 U.S. 520, 535 (1979), the Eighth Amendment standard provides the basis for such claims. See McClendon v. City of Albuquerque, 79 F.3d 1014, 1022 (10th Cir. 1996). "Under the Fourteenth Amendment's due process clause, pretrial detainees . . . are entitled to the same degree of protection regarding medical attention as that afforded convicted

inmates under the Eighth Amendment. Thus, [Plaintiff's] inadequate medical attention claim must be judged against the 'deliberate indifference to serious medical needs' test of Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L. Ed. 2d 251 (1976)." Frohmader v. Wayne, 958 F.2d 1024, 1028 (10th Cir. 1992) (citing Martin v. Bd of County Comm'rs, 909 F.2d 402, 406 (10th Cir. 1990)). See Berry v. City of Muskogee, 900 F.2d 1489, 1492 (10th Cir. 1990).

The Eighth Amendment states that the government shall not inflict cruel and unusual punishments. See Garrett v. C. A. Stratman, M.D., 254 F.3d 946, 948 (10th Cir. 2001). A prison official violates an inmate's clearly established Eighth Amendment rights if he acts with deliberate indifference to an inmate's serious medical needs and disregards an excessive risk to the inmate's health or safety. See Sealock v. Colo., 218 F.3d 1205, 1209 (10th Cir. 2000). Mere negligence does not suffice to establish liability under the Eighth Amendment. See Farmer v. Brennan, 511 U.S. 825, 834 (1994) (holding that liability for Eighth Amendment violation requires deliberate indifference to serious medical needs of prisoners, not simply negligence in diagnosis or treatment). Deliberate indifference requires a higher degree of fault than negligence or even gross negligence. See Berry, 900 F.2d at 1495. To demonstrate an Eighth Amendment violation, an inmate must satisfy both objective and subjective elements. See Sealock, 218 F.3d at 1209. The objective component is met if the deprivation is sufficiently serious. See id. A medical need is considered "sufficiently serious" if the condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.

See Oxendine v. R. G. Kaplan, M.D., 241 F.3d 1272, 1276 (10th Cir. 2001). The subjective component—deliberate indifference—is met if the prison official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." See Farmer, 511 U.S. at 837. When it is clear from the record that a prisoner is being examined and treated for his medical complaints, a difference of opinion over diagnosis or the appropriate course of medical treatment does not violate the Eighth Amendment standard of deliberate indifference to serious medical needs. See Jennings v. Natrona County Det. Ctr. Med. Facility, 175 F.3d 775, 781 (10th Cir. 1999). An inadvertent delay or negligent diagnosis will not establish the deliberate indifference needed to allege a medical wrong under the Eighth Amendment. See Riddle v. Mondragon, 83 F.3d 1197, 1203 (10th Cir. 1996).

Plaintiff argues that Defendants knew that his hernia posed a serious risk to his health, failed to repair his hernia when it was safe to do so, and failed to refer him to an experienced surgeon for five years, misrepresenting that it was too dangerous to repair without letting him know the true reason for denying medical care.

        **1.**     **Dr. Saavedra and Dr. Leyba**

Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs because they failed to refer him to a specialist, even though they were not surgeons, and also failed to inform him of the choice of elective surgery as a repair measure. Plaintiff also contends that Dr. Saavedra should have known that elective surgery was less

of a risk than the emergency surgery. Finally, Plaintiff contends that potential malice can be inferred because he sued Dr. Saavedra earlier regarding his COPD.

To demonstrate a violation, an inmate must satisfy both objective and subjective elements. See Sealock, 218 F.3d at 1209. Plaintiff did not prove that Defendants acted with the culpable mind necessary for an Eighth Amendment violation. Plaintiff argues that because Defendants knew that the hernia would grow over time and his COPD would get worse over time, a fact finder can conclude that a prison official actually knows of a substantial risk from the fact that the risk is obvious. This may be enough to meet the objective component of the Eighth Amendment. However, for demonstrating an Eighth Amendment violation, Plaintiff must offer evidence that Defendants knowingly disregarded his serious medical needs, see Farmer, 511 U.S. at 837, and Plaintiff failed to do so. Indeed, Defendants argue that they prioritized Plaintiff's medical conditions and first properly treated Plaintiff's COPD, as it was life-threatening. In his deposition, Dr. Saavedra stated that he did not consider Plaintiff to be fit for elective surgery because of his medical complications. (Depo. Saavedra at 39 & 40). Dr. Saavedra also stated that Plaintiff's advanced pulmonary problems, steroid therapy, and secondary heart problems related to the lung condition pose high risk to the surgery, and increase his chances of contacting post-surgery infections. (See id.) Finally, Dr. Saavedra stated that, even after taking into consideration the fact that Plaintiff's hernia may enlarge and his COPD may deteriorate with time, he did not want to endanger Plaintiff's life to repair the hernia. See id. Dr. Leyba also stated that, in his opinion, Plaintiff would suffer severe post-surgical complications that could possibly result

in his death and, therefore, he preferred judicious conservative treatment of Plaintiff. Further, Plaintiff's expert, Dr. Unruh, in his deposition, opined that none of the physicians that attended Plaintiff operated below the standard of care. (Unruh Dep. at 78). Dr. Unruh further added that the only flaw he observed was failure of the physicians in referring Plaintiff to the pulmonologist and the surgeon, but he considered that an omission, rather than malice. See id.

Because there is no evidence to suggest that the treatment decisions were anything but Defendants' professional medical judgments, Plaintiff's claim fails. The evidence only shows that the Defendants made the medical decision of not proceeding with the surgery after balancing different elements, such as the risk or threat to Plaintiff's life. Further, the record indicates the number of Plaintiff's medical visits. Both Dr. Saavedra and Dr. Leyba tried alternative methods of relief, such as abdominal binders. Plaintiff's disagreement with his doctors regarding his treatment does not constitute deliberate indifference. See Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1997). Diagnostic techniques or forms of treatment are matters for medical judgment and do not represent cruel and unusual punishment. See Estelle, 429 U.S. at 107-08 (physician negligently diagnosed a patient as a result of the physician's failure to order an x-ray or other diagnostic test). In the present case, Plaintiff alleges that Defendants are liable because they failed to recommend surgery to him (a diagnostic treatment) and failed to refer him to a pulmonologist and general surgeon (a desired choice).

> [I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.

Estelle, 429 U.S. at 105-06.

Plaintiff further contends that he was never fully briefed on the options of surgery. This is disputed by Defendants. However, even assuming Plaintiff's contention is true, this does not constitute inadequate treatment or gross negligence. Where the dispute concerns not the absence of help, but the choice of a certain course of treatment or mere disagreement with considered medical judgment, courts will not second guess doctors. See Sires v. Berman, 834 F.2d 9, 13 (1st Cir. 1987).

As Plaintiff failed to present sufficient evidence to establish the deliberate indifference of Dr. Saavedra and Dr. Leyba, they are entitled to summary judgment on Plaintiff's Eighth Amendment claims.

### 2. New Mexico Department of Corrections and Correctional Medical Services Inc.

An institution is liable under Section 1983 if the injury was the result of the institution's policy or custom. See Buckner v. W. Toro, 116 F.3d 450, 452 (11th Cir. 1997) (concluding that a corporate entity, which contracted with the county to provide medical services to inmates, performed a function traditionally within the exclusive prerogative of the state and became the functional equivalent of the municipality); Austin v. Paramount

Parks, Inc., 195 F.3d 715, 728 (4th Cir. 1999); cf Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978) (concluding that a governmental entity is only liable under Section 1983 when the injury occurred as a result of a governmental custom or policy). A private corporation is not liable under Section 1983 for torts committed when such liability is predicated solely upon a theory of respondeat superior. See Rojas v. Alexander's Dep't Store, Inc., 924 F.2d 406, 408-09 (2d Cir. 1990). Therefore, Plaintiff must show that NMDOC and CMS had a policy or custom of providing inadequate medical care. Plaintiff did not put forth any such evidence. As Plaintiff did not offer any evidence that NMDOC and CMS relied on a widespread policy or custom in violation of his constitutional rights, Plaintiff's Section 1983 claim will not stand. See id.

With respect to his Eighth Amendment claim against NMDOC and CMS, Plaintiff alleges that CMS was deliberately indifferent to his health needs because (1) they had knowledge of their physicians' lack of knowledge and experience to weigh his options; (2) they failed to seek competent medical advice either from a surgeon or from a pulmonologist about the feasibility of performing surgery on him; and (3) they did not send him to a pulmonologist or surgeon until he filed a grievance in 1998. Plaintiff's evidence fails to prove his claim of cruel and unusual punishment against NMDOC and CMS. As discussed earlier, in order to establish a constitutional violation due to inadequate medical care, a prisoner must allege acts or omissions that demonstrate deliberate indifference to his serious medical needs. See Estelle, 429 U.S. at 104. Plaintiff's evidence does not establish that NMDOC and CMS intentionally refused the medical treatment desired by him. See Farmer,

-14-

511 U.S. at 834. The record indicates that Plaintiff received extensive medical treatment at all times for his various complaints. The evidence fails to show that any of the doctors or other medical staff disregarded an excessive risk to Plaintiffs' health at any time. See id. at 837. On the other hand, the evidence clearly demonstrates that the doctors and the medical staff of CMS took Plaintiff's various medical problems into consideration while making the decision regarding the elective hernia surgery. Plaintiff's arguments that CMS failed to refer him to a surgeon until he filed a grievance are without merit. Dr. Herrmann, a surgeon of CMS, examined Plaintiff on January 19, 1997, even before Plaintiff filed his grievance in May 1998. (Ex. 66).

Plaintiff also alleges that when Dr. Herrmann recommended surgery for Plaintiff in 1998, CMS lost or destroyed his surgical request and all documentation related to its decision not to provide surgery for him.[1] Plaintiff did not come forward with any evidence to support this allegation, and a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. See Anderson, 477 U.S. at 256. Further, as Plaintiff's own expert stated that it was merely an omission on the part of the doctors not to refer him to a specialist, he failed to show deliberate indifference on the part of NMDOC and CMS. Therefore, the Court grants NMDOC and CMS summary judgment on Plaintiff's Eighth Amendment claim.

---

[1] Plaintiff admitted that on July 28, 1998, he told Dr. Dhillon that he did not want surgery unless Dr. Dhillon could assure him that nothing would happen to him.

### C. Plaintiff's State Law Claims

Federal courts can refuse to exercise supplemental jurisdiction over a claim if the district court has dismissed all the claims over which it has original jurisdiction. See 28 U.S.C. § 1367(c). Having disposed of all of Plaintiff's federal claims over which this Court has jurisdiction, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. See 28 U.S.C. § 1367(c)(3); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). Therefore, it is unnecessary for this Court to address Defendants' remaining arguments on state law claims in support of their motion for summary judgment.

In determining whether to dismiss a plaintiff's supplemental claims after all federal claims are dismissed, a district court should consider whether the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction. See Anglemyer v. Hamilton County Hosp., 58 F.3d 533, 541 (10th Cir. 1995). After analyzing these factors, the Court determines that Plaintiff should pursue his state claims in state court. With the basis for removal jurisdiction gone, the New Mexico courts should rightfully decide the claims because the case raises important questions about the applicability of the New Mexico Tort Claims Act, medical negligence, and other claims. Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary. See Thatcher Enters v. Cache County Corp., 902 F.2d 1472, 1478 (10th Cir. 1990). Although Plaintiff had engaged in substantial discovery, that evidence could be used to pursue state law claims in the state court. See Annuli v. Panikkar, 200 F.3d 189 202-203 (3rd Cir. 1999).

## III. CONCLUSION

Based upon the undisputed facts, the Court concludes that Defendants are entitled to partial summary judgment with respect to Plaintiff's Section 1983, Eighth Amendment, and Fourteenth Amendment claims. Defendants' motions for summary judgment are denied in part as moot with respect to Plaintiff's state law claims based on the Court's decision not to exercise supplemental jurisdiction over those claims.

**IT IS, THEREFORE, ORDERED** that *Defendants New Mexico Department of Corrections and Correctional Medical Services' Motion for Summary Judgment* be and hereby is **GRANTED IN PART** on Plaintiff's Section 1983, Eighth Amendment, and Fourteenth Amendment claims and **DENIED IN PART** on Plaintiff's state law claims.

**IT IS, FURTHER, ORDERED** that *Dr. Saavedra's Motion for Summary Judgment* be and hereby is **GRANTED IN PART** on Plaintiff's Section 1983, Eighth Amendment, and Fourteenth Amendment claims and **DENIED IN PART** on Plaintiff's state law claims.

**IT IS, FURTHER, ORDERED** that *Dr. Leyba's Motion for Summary Judgment* be and hereby is **GRANTED IN PART** on Plaintiff's Section 1983, Eighth Amendment, and Fourteenth Amendment claims and **DENIED IN PART** on Plaintiff's state law claims.

**IT IS, FURTHER, ORDERED** that this action be and hereby is **REMANDED** to the First Judicial District Court for the County of Santa Fe, State of New Mexico.

**SO ORDERED**, this 4th day of October, 2002, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge